And let's see, I think both council are here in person. Good morning, may it please the court? Good morning. I'd like to reserve a few minutes for rebuttal. Can you maybe speak a little bit closer? Can you hear me? Yes. Great. I'd like to reserve a few minutes for rebuttal, please. My name is Andrea Bird, counsel for appellant Shayna Lathus. We're here on a motion to dismiss in what should be a factual inquiry. The First Amendment protects the right to be free from government retaliation for speech, assembly and political affiliation. This right is not abandoned at the door when somebody goes and works for the government, whether they're a volunteer or an employee. When Ms. Lathus attended a rally in support of immigration rights, she participated in constitutionally protected activity. Then council member Carr fired Ms. Lathus in direct response to that protected activity. Well, isn't isn't the central question in this case whether or not Ms. Lathus' position could be fired for protected activity? So let me just run through some quick question here. Thanks. If Ms. Lathus had been Mr. Ms. Carr's secretary, she could fire her, you agree? Chief of staff, she could definitely fire her. Well, there's cases that involve people in the office. I mean, so Ms. Carr is a political person. She's an elected official. And as I read this statute. Every council person gets one appointment to this board. Yes. And put aside protected activity for a second. There doesn't seem to be any dispute that the person serves at the pleasure of the council person. Well, Your Honor, the council itself, once once the members are appointed to the council, and this is not in the record because well, there is no factual. The municipal code says the appointing authority has the ability to remove someone. If the council person is the appointing authority, can she remove someone? Let's assume for a second, no protected activity. Person just doesn't show up for meetings. She could. Yes, she could. Carr could remove Lathus for that. The council could remove. That's my question. Is that where we're in the municipal code? Do you find that? That they could be removed? No, that the council can do it as opposed to the appointing person. I don't find it. I also don't don't. I find something to the contrary. And that's why I'm asking the code seems this because after all, if only the council could remove her, you've got an even better claim than the one you're making. Right. That's not and that's not the claim. That's not the claim you're making. I believe that Ms. Carr probably could remove her for protection for not protected activity, because that's the way I read the code. So assuming that's the case. My question, and it's a question for both sides, for me, it's a central question in the case, is this person because Ms. Lathus, because she is the appointee of Ms. Carr to a board that only has appointees by council people. Sufficiently identified with Ms. Carr as a political matter so that she can remove her even for engaging in protected speech, what we sort of call in the Hoogler case, the alter ego or the political face of someone. Or is she not? I would say not, Your Honor. Obviously, that's obvious. Obviously, that's why. Let me tell you why. So, Your Honor, what's not again in the record all the way yet? Well, one of these is just on the structure. See, I know that you say discovery might have shown something, but I'm just looking at the structure of this thing. If I appoint a chief of staff in my office, it's clear. And he's the chief of staff. We don't need to go look at the record to find out how important he is or what he thinks. Yes. And I plausibly plead before you get discovered. Yes. Yes. And so what are you pleading? What am I pleading? What I'm pleading? Sure. So what what we're pleading here is that, no, she did not have this this relationship with Ms. Carr that would that would equate to my question. Why isn't that established on the face of this of this appointment structure? We have a level. We have an advisory board with one person appointed by each council person. Oh, yes. Removable by each council person for purposes of my question. And your honor, I would direct you to Thomas V. Carpenter, which says you can't just look at a job description. You can't just look at what. But sometimes you can. As you said, chief of staff is one. So I'm trying to figure out whether or not. So this statutory or code job. Right. Is such that that you could. So what I would say, your honor, is that once these people are appointed, they work together as a team. They do not identify themselves as they don't stand up and announce themselves when when they're on the board saying, I am Councilmember Carr's appointed person. They are introduced as individual people. They listen to all these applications. They listen to the community feedback. They as a whole, all seven members put together the recommendations, hand them up to the city council as a whole. They don't miss Ms. Carr and Ms. Lathis did not meet individually to discuss any of these issues. Once she was appointed, which, by the way, she was appointed by text message. Basically, Ms. Carr sent a text message to Ms. Lathis saying, hey, would you be interested in doing this thing? She said, oh, OK, sure. And then they never talked about it again. So this isn't the kind of situation where you have a chief of staff who is working all day, has to be on the same page as their council. Ms. Lathis, instead of doing what she did. Had denied the Holocaust. Could Ms. Carr fire? Denying the Holocaust has nothing to do with her job. And if she was doing it as your position, is that? Yes, my position is the protected activity. It's protected activity job. Constitution protects speech, whether we agree with it or not. She remains on this board as Ms. Carr for the rest of that term. Is there a term? There is a term. Yes, your honor. It's a one year term or it's it's the same year as the HUD year. So it actually is a little shorter than a year. Once you look at by the time they start and end. Does the designee description, which I think is accurate in this case, make a difference? There's a lot of cases that talk about when you are. Political officials designee, then you, the official is entitled to. Ask for political loyalty from you, if you will. Right. And are you speaking of the patronage cases? Yes, sure. So no, I don't believe so. And again, what's not in the record yet is that various council members have appointed in the past people from other political parties, people from all political parties are there working together on that council or on that board to make these recommendations. They're filtering out information and making the recommendations, which then the city council as a whole takes the recommendations, has another public hearing to get public comment on, because that's what's required by HUD is that you get this public participation, the community participation. So after that, then the city council usually makes changes to what the recommendations are and then puts it into place. So it's the board works as a whole. The council works as a whole, the board reports to the council, but it's not these individual relationships. That's what we believe the record will show. Let me be clear, the record doesn't say that yet. Just to be clear, your position is that you created an issue of fact that should go to trial, not that you're entitled to summary judgment. Well, this is a motion to dismiss case. Yeah, I understand. Yes. I mean, they alleged enough facts that ought to go to trial. Correct. You don't know whether you'll get past summary judgment. I don't know, Your Honor, because we're not there. We haven't taken any zero, zero discovery in this case. So again, I want to get back to the political aspects of this, which is what the district judge focused on, and I think incorrectly on elected officials. But I'd hate to run for office the next time after appointing somebody to a board if she had denied the Holocaust or attacked Jews or something like that. Absolutely. As would I, Your Honor. That's my person. You appointed her. Does this record give us enough for that kind of thing? So the remedy for speech that you don't like is more speech. So what Ms Carr could have done was almost what she did, which is make a public statement saying, I don't agree with this person. I don't like what she did, and leave it there. And we wouldn't be here right now if that's what had happened. But instead, she took that actual unconstitutional step of taking away a government benefit that would have chilled speech in the future. And again, it doesn't mean that Ms Carr has to like anything that Ms Lathis says. Well, if there's nothing in the code that prohibits a council member from removing one of these designees at will, you say you can't do it for protected activity, but for some other reason. And isn't the council member then put in the boxes, political boxes, saying, you're responsible for what that person just said. You have the right to remove that person under the code, and you chose not to, so you must be buying into what she said. Again, I think the answer is more speech. And that's, I also swore to uphold the Constitution when I took this office, and the Constitution says that I can't remove someone for their speech. I think that's a pretty clear answer that she could have taken, and it would have been a less restrictive means here. Can I ask you, we have, I was trying to find the name of the case. We have that Mem Dispo involving like a judicial nominee who was then? Yes, Chen, Your Honor. So is your view that that case just wrongly decided? No, Your Honor, I think that there wasn't a benefit taken away yet in that case. In that case, the mayor had basically appointed Mr. Chen, I'm assuming it was a Mr., had appointed Mr. Chen to then be confirmed by the city council. Mr. Chen said something that then the mayor said, okay, well, there's no way after that that the city council would confirm him, so I'm withdrawing that nomination. So that was a case of he hadn't yet had that government benefit. He was not confirmed yet. So the analogy is if President Biden nominated you to the district court, and you said something stupid, he withdrew the nomination. That's, yes, and I hope that doesn't happen, Your Honor. You don't think that would give rise to a claim? I don't think it would, Your Honor, no. Even if it was clear that it was done in retaliation for your predicted speech? Well, if you're not taking away the benefit, then it's. So a pending nomination, a nomination in your view, is not a sufficient benefit, but being on a volunteer board is? I would say yes, Your Honor. We haven't, I take it in this case, have you sued anybody but the city? No, Your Honor. So there's no immunity issues? No, Your Honor. Are there Monell issues? We've pled Monell that this has happened before, and that it's a pattern of, a pattern of practice, and. The 1983 claim. It's a 1983 claim, yes, Your Honor. If it's happened before, does that give us any, maybe it's something that needs to go to a trier of fact, but does that establish that people really do get fired for their political beliefs on this council, and that therefore, other folks who are appointed to it are assumed to share the political beliefs of the appointee? Well, I think, no, Your Honor. I think that what we see is that people with certain political beliefs are always fired, yes, or often. It doesn't mean it's constitutional, that it's happened before. I have one other question that's not on the record, and it was one that Judge Vitaleano raised. There's a term, has it expired? Oh, yes, Your Honor. So one of the things you seek is reinstatement to the board. Yes, Your Honor. You can't be entitled to that, can you? I mean, you may have had damages, and there may be some, but you can't require somebody to, who doesn't want to appoint you, to appoint you, can you? Because it had already been expired. Probably not, Your Honor. And also to remove the person, and presumably replace? Right, Your Honor. We're several terms later now, so. Yeah, so you're just left with what a damages claim. There may be other claims. There could be something for, well, sure, there's damaged claims. What, why don't you save? Maybe an apology. Why don't you save the rest of your time for rebuttal? Yes, please. Okay, very good. Thank you, Your Honor. Let's hear from counsel for the city. Thank you, Your Honors. Good morning. My name is Mark Austin from the law firm of Burke, Williams & Sorensen on behalf of the city of Huntington Beach. So, to address the first question that was asked, there is a direct allegation on that issue in the complaint in paragraph 21, where they do allege specifically that Ms. Carr, quote, had final policymaking authority on the decision to hire and fire Ms. Carr, Ms. Lathis, and to force Ms. Lathis to make a public statement. Yeah, and I don't doubt that she did. The question is whether she could do so in response to protected activity. Understood. It sounded like there was some factual dispute. Yeah, no, but I think by the end, your friend said she didn't dispute that. Okay. So, I think that there's no way to divorce this position from its political nature. It is a political thing. I think primarily it is, and the primary fact we have to rely on is the fact that it's an appointment by a single council member. Each council member has their proxy on that board. Is that enough to establish it as a matter of law? I think it is. You may be right that in the end it should be found to be this. Is that enough? I mean, yes, in this context, which I guess implies that it's not enough, but the rest of the context matters in that this is an advisory board that is advising the council on policy. It is a public face for the council that's having Brown Act governed meetings before they're speaking on matters of policy and advising the council on matters of policy. So, it looks very much like a planning commission or some other board that is directly appointed by the council and where they're speaking to the public and people will identify comments made by them by the council member who appointed them. You say that, and I guess if we were at summary judgment and there was evidence in the record that established that clear linkage, I think I'd be much more sympathetic to your argument. But, I mean, just looking at the complaint, there's not very much there that we ... I mean, we have to just accept this as the factual predicate for this claim. Well, it is in the municipal code provisions that we take judicial notice of that they hold public meetings. We cite these provisions in our briefs. They hold public meetings. They're governed by the Brown Act. And they advise ... Their purpose is to advise on matters of policy. That's their only purpose. Yes, but I looked at the ... Well, you tell me if I'm looking at the right thing. What I have before me is just ... Is it ER 44 to 45, or is there more? So, chapter 2.97 of the municipal code. Yeah, okay. So, I mean, I looked at those. There's nothing in there that establishes them as a matter we could take judicial notice of. The close political identity between these appointees and the council member who appointed them, is there? Well, I mean, it obviously doesn't get into the minds of the public as to whether they, in fact, do identify them with members of the public. All we can tell from the code is that each council person appoints someone, and each council person has the general ability to remove that person. But it's also a political body that they're appointed to. How can I tell that from the code? That's my question. Well ... All I can tell from the code is that it advises ... It has public hearings. It advises, it makes recommendations to the council about policies related to housing. Correct. But why does that make it ... See, if you're planning board of commissions, in some of my mind, you're no longer the representative of somebody, even though you're appointed. I'm trying to figure out here whether there's enough on the face of the record, and we get to take judicial notice of the code. I don't doubt that. To establish that she falls in this category of what we sometimes call confidential, but we really mean political appointees that are removable at the will of the politician. How can we tell that from just reading the code? Well, I don't want to under-emphasize or pass over the significance of the fact that it is appointed by a particular member of the council. So, you are tethered to that person. No, it seems to me ... And I think that gets us 99% of the way there. If not 100%. It strikes me as it's your complete argument. Well, I think that to the extent that is found to be lacking, I think that should get us 100% of the way there. But if that is not enough, then the policy nature of the board, I think, is also significant in that it is advising the ... It's clear under the code, apparently, that there is an appointment for a term. It's also clear under the code that the appointing authority, the council member, has the right to remove the member he or she appoints, which means that they don't have to finish the term if the council member doesn't want them to finish the term. The issue here, and there's nothing in the code that provides any restriction, is there? No. The argument here is being that it's a policy argument, not a code argument, a policy argument that somehow someone who takes the position and exercises her right of free expression, quote-unquote, that that is excerpted from the code and that that can't be the reason that the council member can remove somebody before their term ends. Right. My understanding of the process is correct? I'm not sure I ... Yes, I think it is. There's nothing that prevents her ... There's nothing that restricts her ability. It's an at-will appointment, essentially, that restricts her ability to remove her. And I think- But is it potentially the Constitution? That's their argument. Correct. Finding a constitutional claim. Correct. And I think that the lower court made a very compelling point in the fact, and I think this is another thing that causes it to be political in that it is an expression of the First Amendment and political might of the appointer. It's Ms. Carr exercising her rights. The complaint even states that when she fired her, she said those that do not immediately ... She publicly distanced herself from her. This was not done under cover of night. She said, you're radioactive. I'm removing you. That alone shows that in the eyes of the political players here,  And she publicly came out as alleged in the complaint and said, she does not support my values, so I'm removing her. Let me change the facts for you a little. You don't need to tell me it's hypothetical because I'll admit it in advance. The city council, every city council person gets to appoint one member of the sanitation department who serves at the will of the person on the city council. And the member of the sanitation department engages in protected activity, switches their political party, makes a speech, does whatever, that the council member doesn't like. Same structure, serving at the will. Could they remove that sanitation worker? Gets to appoint as a paid position or is that? Yeah, sure, because it seems to me as I read the case law, the fact that you're being paid doesn't really determine whether you have first amendment rights. So assume they're being paid. Right. See, I guess the reason that the question troubles me, and you can answer it if you want, is that we seem to know something about the sanitation worker position that I don't know about this position. In other words, I think we know that political qualifications are completely irrelevant to cleaning up the streets. Right. I don't know whether they're relevant or not to this one, but your position would have to be, it seems to me, that by the structure of it, because the street sweeper is Ms. Carr's person, because she's named her and she's identified with her, that she could fire her too. Well, honestly, Your Honor, it is hard for me to understand a position where, or to envision a position where a council member has discretion to appoint and remove, and yet it is to a position that functionally equates to employment, or you're just... Right, but she's losing a benefit. If there was a way to point someone to a position or say, I choose this person, but then otherwise, from that point forward, divorce yourself from that person and have no affiliation with them, and they otherwise just sort of join the mass of employees with that unit, which is sort of what your hypothetical is envisioning, I could see that as giving rise to a First Amendment claim for retaliation in that circumstance. Is it because that person is no longer identified with the appointee? I think so, but that doesn't exist in the... How do we know that this person is identified with the appointee? Because they're... Other than the appointee reaching out and saying, she's my person and she said stupid stuff. I guess because they're appointed, which is why I'm having trouble with the hypothetical, because I don't think that exists in, you know, into a non-political, you know, streetsweeper position. Let me try another hypothetical for you. Let's assume that we went to summary judgment or trial and your opponent came up with evidence that nobody knows who appointed the people to this board. It's just that there's not a single member of the public who knows, other than the seven people on the council, who appointed somebody to this board. Would it matter? I don't think that matters. I think the public can know. The public would have a right to know. And, you know, you would be surprised at how, you know, much public local gadflies know about what's going on behind the political scenes there and are interested in those sorts of issues and who appointed who. I think the important analysis that came out of Blair and the other cases that were cited by opposing council is that there appear to be two things that matter most. I mean, it's political, meaning that it implicates the sort of First Amendment rights of the alleged retaliator is point A. And point B is that the hand that taketh away is the same hand that giveth, you know? So in the cases where they found to be, you know, a potential violation or an adverse action, it was the action they took took away powers that the electorate had given the position or that something other than the giver had. What we're dealing with here, I think, not the Blair line of cases, which deal with retaliation of one public official, elected official against another one, but rather, I think, with the L. Rod Brante line. And so I'm trying to find out, and haven't we emphasized in that line that this will normally be a question of fact? Whether your job description fits, falls in this box is normally a question of fact? Well, I do think we fall under Blair. I don't think that it comes down to elected or non-elected. It has to do with whether it's a- In Blair, the person kept his position. He was, you know, named as vice president of the board by his colleagues. And they said, we no longer want you to be our vice president, but you're still on the board. Right. And that was the distinction that I was just making, is that they didn't take away anything more than what they had the power to take away. Had they taken away his boardship, or his membership on the board, that's something the electorate gave them. So he had no power to do that. They took away what they could. Ms. Carr took away what she had the power to take away, which was the very thing she appointed her to. So, so long as there's parity in that regard, I think you fall under Blair. Doesn't Blair emphasize sort of the rough and tumble of electoral politics? When you run for office, you take on the risk that other elected officials will screw you over. And I think that is the same when you become, you know, the complaint makes it clear that this was used as her political stepping stone. She wanted it for that purpose. And, you know, it's the same as being affiliated. I'll be your guy. I'll be your woman. I'll be your appointee on this board. We're, and then, wind shifted. You did something that makes me look bad, so now we're part in company. So it's just as rough and tumble in the appointment context as it is, you know, one board member against another, as far as I'm concerned. But there is a comment in the Elrod case to the effect that, that uses the term advisor. And when they're applying the policymaker exception, if we're gonna jump into that case law, when you are applying the policymaker exception, that court did use the term advisor as somebody who fell within that exception. Right, but they were using it inside a structure where you were the only person, the advisee was the only person the advisor was giving advice to. I'm not sure that's a relevant distinction for purposes of application of the, you know, whether she's a policymaker. All she's doing is saying, we think you should do X. She's surely a policy advisor. Correct. Is she a policy advisor to Carr or to the council as a whole? Well, she is Carr's representative on a body that advises the council. That's how I would phrase it. So, if the panel has no further questions, that's a conclusion to my argument. Okay, great, thank you. Let's see, you have two minutes for rebuttal, perfect. Thank you, Your Honor. A few points that I would like to address from, that my friend brought up here. First, in terms of appointed versus hired. The Sixth Circuit that, before Elrod and Branty did a lot of the patronage hiring in Chicago, a lot of case law comes out of the Sixth Circuit. They've held that they're- Which is not in, which Chicago is not in. Oh. Seventh Circuit. Seventh Circuit, I'm sorry. Well, then this one's from Sixth Circuit, Indiana, I think, perhaps? Yes, Indiana, so, same area there. So, the Sixth Circuit said- Where's that in the- Huh? Try Ohio. It doesn't matter, it doesn't matter. Make it, please, proceed, proceed. Okay, sorry about that. Wherever it was, in the Midwest, let's say that. So, there were a lot of, this patronage dismissal issue was very common in the Midwest areas. So, we've got a lot of Sixth Circuit, Seventh Circuit cases. And the Sixth Circuit did say that an appointment to a public position, that there's not a meaningful distinction between a hiring decision and an appointment to a public position. So, wanted to throw that out there. The other thing I'd like to point out is that in Elrod and Branty, the way that the Ninth Circuit, more importantly, Branty, says that this policymaking and advising, the burden's on the defendant, and it's, quote, the hiring authority can demonstrate that party affiliation is an appropriate requirement for the effective performance of the public office involved. So, that's a deeply factual issue. So, again, I just want to point out that all of these are great questions that we don't necessarily know the answers to yet, because we haven't had any discovery. But the burden is on the defendant, in both Elrod Branty and in Pickering. The burden's on the defendant to show that this would have affected their job in some way, so that they can throw this out. It doesn't have to affect their job. Right, disrupt. Yeah, it has to be a requirement of their job. Requirement of their job, yes. Or if you're looking into the Pickering balancing, then it's, you know, can they carry out their job? Was it her job representative of Councilwoman Carr? No, her job was, no, Your Honor, thank you. Her job was, look at all of these applications from the community, be a representative of the community. I would say, more than anything, she's representing the community, not Ms. Carr. The whole purpose of these HUD grants, and it's something that would be shown in the record if we're able to develop it, the city actually encourages low-income and minority representatives from the community to apply, because they want people from the community. And they're answering to the community. They're not answering. Again, she met maybe once, I believe, with Ms. Carr after she was appointed to the board and they just had gone to coffee. Didn't discuss board matters on a regular basis. She didn't report to Ms. Carr. She was responsible for getting community input, putting that input together with the other six members of this board, putting together a recommendation on everything, giving it to the city council as a whole. Does that answer your question, Your Honor? Yes. Any other questions? No. If not, Your Honor, I'd like to just ask that we reverse and remand with instructions to let us proceed. And in the alternative, leave to amend to add some of these facts I've talked about today. Okay. Thank you, Your Honor. Thank you very much for your argument. The case just argued is submitted and we are adjourned for the day.
judges: WATFORD, HURWITZ, Vitaliano